Alright, let's go ahead and have a session. Case number 316-0378, C.H. and Kelly Otterness, et al., appellants by Michael Warner v. Pla-Fit Franchise, LLC, appellee by James Brannett and P.F. East Moline, LLC, appellee by Michael Donahauer. Thank you. Please be seated. May it please the Court, Justices, Counsel, Client, C.H., my name is Mike Warner and I along with Attorney Mark Sear represent the appellants in this case. What is this appeal about? This appeal is about damages, specifically emotional distress damages. I keep going back to this. This is not some unique or wild or extravagant cause of action that we are trying to impose on the defendants in this case. The right to privacy is within our State of Illinois Bill of Rights. The right to be free from invasion of privacy. Where are we today in terms of emotional distress damages? We're post-Rickey. Rickey is still the law. Up to and including Clark v. Memorial, Clark overruled Seminac, but we are still with the decisions by the Illinois Supreme Court that for a direct cause of action for NIED, the negligent infliction of emotional distress, there must be physical impact. Rickey tells us that now with that landmark case, there is the zone of danger. The bystander may have a cause of action if the plaintiff is within the zone of danger. The case in Clark reversed Seminac on the basis of emotional distress, holding that a tort was already committed, wrongful death, against the plaintiffs in that case, the parents. Therefore, they did not have a freestanding case, but they have emotional distress as an element of their cause of action for wrongful death, stating that Seminac was improperly decided on that point. Rarely are we fortunate enough to have a case decided in the interim of appellate briefing. That's the Swiles case, if I'm pronouncing that correctly. I tried to point out in my initial brief, and I don't think I argued this very well in the trial court, Clark tells us that there is no cause of action for the negligent infliction of emotional distress unless there is physical impact. But if you have a case where there is a freestanding, it's not a freestanding case, but if it's anchored by another tort, then emotional distress damages are allowed. We have the Shields case. Counsel cited the Shields case in their brief, but the Shields case came out in certain, first of all, they corrected Kogan and Pasquale, saying that some of the statements that were made were incorrect and that were simply dicta. We have the Shields case. Facts are not in dispute. Ladies House is going through a foreclosure. The bank files a complaint for foreclosure, obtains a judgment foreclosure, and then hires a company to make sure that the property is not harmed and also to make certain repairs. That company hires another company, I think they're called Kars, and two gentlemen come out to the house, do what they have to do in their minds to make sure that nobody was home, open up the door and confront this poor lady. And she maintains, files a lawsuit for the emotional distress summary judgment, not a motion to dismiss a 615 motion, summary judgment in the trial court on appeal affirmed in a divided court. Two cases, two of the causes of action for trespass and also private nuisance were not dismissed, still pending. The court took us on a historical journey up to Rickey and post-Rickey and discussed the discrepancies and I think perhaps that's why they did it, to clear up some ambiguity. They told us that there is no negligent infliction of emotional distress without any physical content. Justice Garvin puts it in perspective and reiterates what the Clark court told us. That there's a clear distinction between a claim of negligent infliction of emotional distress and a claim of liability for negligence or other personal tort. In which the act or omission of the defendant caused emotional distress for which damages may be appropriate. Where the claim of emotional distress is freestanding and not anchored to any other tort against the plaintiff, the court has applied special restrictions which include the requirement of a contemporaneous physical impact or injury. So what's the tort? Intrusion into the seclusion of another. Doesn't that have to be intentional? That's never been decided as to whether it has to be intentional, reckless or whether or not one could have the general negligent intrusion into the seclusion. The restatement says that it is intentional. It was in this case. That tort and the individual tortfeasor did in fact commit that tort. There's no question about that. But Planet Fitness didn't. I'm sorry? But Planet Fitness didn't. That's right. So how is that tort connected to Planet Fitness? Planet Fitness is liable as a business invitor for the criminal slash tortious acts of the tortfeasor because of the reasons that we stated. So you have the anchor. Wait, wait, wait. What reasons were those? Both, as I stated in the facts of this case, both the franchisor and the franchisee knew. We allege that they knew that this type of activity happened at other Planet Fitness establishments. They knew that. But don't they have to know that it happened at their establishment? I have no evidence of that now. I have no evidence of that now. I don't know what discovery is going to give us. Also, the... Well, let me ask you this. In the real world, any place that especially women or people might be disrobing, whether it be a restroom or a tanning booth or a shower room or something, we see that there's some sicko that's going to put cameras in virtually every place you can think of, that they might find somebody in the state and disrobe them. And we see the cases all the time. It just happens out there. So have you seen any other case anywhere in Illinois or anywhere else where a business liable for a tort for negligently failing to detect cameras that were intentionally hidden cameras, especially intentionally placed by some third-party tort feature? Depends on the facts of the case. You might have an employee of the establishment. You might have an employee that was improperly trained or wasn't trained at all to look for these things. I suggest that there is a duty, and we hope that this court will come out and use a deemer statement to say they are deemed in the establishment where people are vulnerable like this, the proprietors are deemed to know that these people are at increased risk of this occurring. So, okay, but I guess my question is, if we do that, as far as you know, would we be the first court in this country to do it? No, we'd be the first country to do that. It depends upon whether or not you have an employee doing it or a member doing it. Unless it was an employee doing it, we knew who was doing it in this case, right? So I'm just asking you, is there any case that you're aware of anywhere in the continent or non-continent, 50 states where this is held to be tortious conduct on the part of it? No, but I know of no case that's directly on point and says that it's not a cause of action. This, you can't have the tort of an intrusion into the seclusion of another without emotional distress being part of the damages. It's part of the element of the case. No emotional distress. If you have emotional distress, it has to be and is anchored to that tort. It's part of that tort. And you did not allege an intentional tort by Planet Fitness? No, we are alleging that the case against Planet Fitness is a case based upon the duty, liability of a business in vitro for the liability of third party criminal activity by people and or tortious conduct. Here it was criminal activity. Well, let me, for example, on that line, bars know that people get drunk and sometimes people get drunk and they start fights and hit people. And yet, the bar is generally not liable if some drunk goes over and punches out another patron, right? Unless they have reason to know that that guy at that time was, if they could have stopped at the time or something, but generally not liable for that, even though. I'm not following you on that. Well. Don't give me that again, Joseph. Well, I guess my point is that the liability for, the liability of a business in negligence for the intentional tort of another customer is, have you had any cases on that where somebody's held, a business in vitro, you know, premise of liability is liable in negligence for the intentional tort of one of their other business invitees. Because that's what we're talking about here. Some other customer went in there, placed some cameras, they didn't find it, so you're saying one of their invitees commits an intentional tort. And the business owner should be liable in tort for negligently failing to detect and stop that conduct by the intentional tort by the other person. The answer to that question is yes, under the appropriate circumstances. If you have employees in the bar seeing that somebody is intoxicated and he's told by one of the other person, this guy started three fights outside, he's a mean guy, he's under the influence of crystal meth, and he just beat up his wife before he came here, there is a duty imposed upon the tavern to either get him out of there or call the police and get him out of there. So the answer is yes. Okay, but an analogous situation here would be if somebody said that this fellow that put these cameras in, they had told the plant of fitness ahead of time, if you allege that, hey, everybody knew, they were told this guy sticks secret cameras in any place he can stick them because he's a twist of the system, and you let them come in and go in and out of your canning rooms, that would be analogous to the bar situation you gave, and then you would have another case. Well, as a matter of fact, we do have it in this case because they were aware of it on either the 5th or the 6th, and I can't remember which date, they still didn't take them out, and people were going in and being videotaped after the first time that they knew this. But they called the police, the police came in and did a thorough search and didn't find any others, and then apparently somebody came in and put in a second one, maybe the same person, but there's still not a lot of notice. We suggest that they should have done it. Anytime, first of all, anytime a business invitor has a situation where a human being, regardless of gender, is vulnerable, then if they're at increased risk of being vulnerable, then a duty is imposed upon the business invitor to acknowledge that risk and do what is necessary under the appropriate circumstances. What if this lady was raped, and they knew at other locations that this had occurred, not at their location, but at other Planet Fitness locations, and that it was easy for someone to come in, the locks didn't work, or they were defective, and it was easy for a perpetrator to come in and engage in this activity against either a male or a female. Liability is imposed, and I suggest... Yes, you do, but should it be any different? Well, the law, it's always been different. The law has always said it's different. We didn't write it. It's just that that's been the law for... It was a court rule. If we say no to that, emotional distress is an element of the cause of action for intrusion into seclusion of another. It's part and parcel of the cause of action, and that's the basis for this, that it's anchored. This damages, the emotional distress damages, are anchored to that tort of intrusion into seclusion, and it's anchored to the negligence of the failure of both entities to do what they should have done to properly train their employees to look for these devices. It's not hard to do, pay them a decent wage and make them search for these before anybody goes in or right after they go in, to search for these. That's all we're saying. That's a negligence case against them. The tortfeasor, it's kind of like a legal malpractice case. You have a case within a case. You have to prove negligence against the business invitee, and you have the tortious act, you're a criminal by the individual tortfeasor. This is a personal tort, and they bring this up. Not only do they start to bring it up briefly in the Clark case, but the government really brings it home in his concurring opinion. I mean, he can't, I think it appropriate to go out and say, well, look, these types of causes of action you can have, at least to find this is not part of your decision. So, thank you. Mr. Donabowler? That's correct. Thank you. You've got nine minutes. I've got a lot to do in nine minutes. My name is Mike Donabowler. I represent the PF East Moline in this matter. I'll be asking you to affirm the dismissal of this case when I'm done. I just want to address a few of the things that Mr. Warner said. First of all, intentional infliction, I'm sorry, intentional intrusion with the exclusion of another is an intentional tort. That's the formulation in the restatement. It's also the formulation that was approved by the law and the court in the seminal decision that adopted it into the law of Illinois. It's an intentional tort. It's not a negligent tort. And one of the first things I was going to say when I stepped up today was there are a few things that aren't at issue in this case. One of them is that plaintiff hasn't pled, argued, anything with respect to intentional intrusion upon seclusion. And that's the case. Didn't plead it below. Didn't argue it up here. Didn't brief it at all. This is the first that I had heard about this. He said in his brief this is a negligence claim. He said there's two negligence claims. One is a premises liability claim with a dangerous condition on the premises, ultimately resulting in a third party intruding on the seclusion of the plaintiff. And the other one was an invite tort, a negligence claim against an invite tort, basically for failing to prevent the third party perpetrator, Trent Hamer, from preventing it. Those were the claims that were here. And now literally for the first time I'm hearing that he wants my people to be held apparently precariously liable. That's what it sounds like to me for intentional intrusion on the seclusion of another. There's absolutely no basis for this. If what he's saying, and he's talking about being anchored in the tort of intentional intrusion and seclusion of the other, if he's saying that pure emotional distress damages are recoverable in a negligence action, which this is because the negligence allegedly led to the tort that Trent Hamer committed, that is intentional seclusion, intentional intrusion on the seclusion of another, those damages are available for intentional intrusion. It should be available for the negligence claim. There's absolutely no authority for that anyway. And if that were true, and if Trent Hamer had committed a tort for which punitive damages would be available, then by Mr. Warner's reasoning, he should be able to claim punitive damages in this negligence action against my clients. That is not the law. Plaintiffs have not alleged intentional intrusion on seclusion against either defendant. They haven't argued it. So the damages for intentional intrusion are not recoverable from either defendant. It's that simple. The law, I think, is fairly clear, Your Honors. If you want to state a claim for emotional distress damages in Illinois in a negligence context, you've got two ways to do it. One, you can plead a physical impact or injury contemporaneous with the emotional distress to recover as what's called a direct victim. Two, as a bystander, you can plead a direct impact to someone else and ignore in the zone of danger, which means, and this is a quote, in such proximity to the accident in which the direct victim was physically injured that there was a high risk to you of physical impact. There is no question that plaintiff has not done that. They admitted on a number of occasions in their briefs, we're not even trying to plead negligent infliction of emotional distress. They're saying this is a negligence claim. It's a straight negligence claim. They have not pled the elements of negligent infliction of emotional distress. All the claims the plaintiff said they have are negligence claims, the premises liability claim and the invitor claim. That's what they've had. That's what plaintiffs said they were. That's what the case law says they are. They're negligence claims. The restatement sections that were cited by the plaintiff relating to the premises claim and the invitor claim, that's section 343 and 344 of the restatement. Those sections are both in accord with Illinois law, Illinois negligence law, and they require physical harm, not just emotional distress. Mr. Warner talked about the Clark case. The Clark case is not controversial. It has been the law here for 100 years, even since Roberts was created. If you state, for example, in a negligence claim that there's physical impact and you have emotional distress damages, you can collect them. You don't have to meet the Ricky Fleeting requirements. You can just collect them because they are part of the damages for that tort that you've established. And I want to say that in Clark, the tort that the majority was talking about, the tort that occurred was wrongful birth. I think Mr. Warner mistakenly said wrongful death. It was a wrongful birth case, and that allows recovery for emotional distress. So plaintiffs were allowed to recover emotional distress damages in that case without having to meet the Ricky requirement, just as they would do in a negligence claim that involved direct impact. What Clark does not mean is that we're throwing away 100 years of negligence law in Illinois and saying that the impact rule doesn't apply. It doesn't say that you can have a negligence claim in Illinois when you're pleading purely emotional distress damages. I'm talking about absent meeting the Ricky requirements. Two minutes, please, counsel. The Schweitz case I just want to touch on. It confirms, I think, what we said in our briefs. The impact rule still applies. The zone of danger rule applies for bystanders. And it dismissed the claim. Now, in his citation to the Schweitz case, Mr. Warner has talked really only about the concurrence. He hasn't really cited to the majority opinion. He's talking about Justice Garment said this and Justice Garment said that. That's a concurrence. A concurrence is not binding authority on this court. And remember, too, that in the concurrence, Justice Garment says that the impact rule applies twice. And remember that she voted to affirm dismissal under very similar circumstances where the plaintiff had pledged purely emotional distress damages and no impact. And I think she would do it in this case as well. I think just briefly, some of Justice Garment's interpretations of Clark I would disagree with. They disagree with the way the majority interpreted Corgan v. Muelling. The majority in Clark said that that's a direct impact negligent infliction case. And in Clark, she says that's also a professional liability case. She says that Corgan and Clark were both professional liability cases. They weren't. I mean, it's a wrongful birth tort, which has been carved out by the Supreme Court. It's got its own particular requirements. But it's an independent tort, and, yes, you can recover emotional damages under it. The problem here is that plaintiff hasn't pled a tort. Time, counsel. Any questions? Thank you. Thank you. Mr. Brandt, you have six minutes. I'm hoping I have a better time with fitting in under the time limit. We obviously join, I represent PlayFit Franchise, the franchisor. And let me interject one thing. I know that you used, you both used the term Planet Fitness as the name for the defendant, but there is no such company named Planet Fitness. That's just a trademark. We're called PlayFit Franchise. There's many reasons for that. We're the franchisor. We're located in New Hampshire, and that's a key factor, because being even a little more removed from the plaintiff, we have additional arguments beyond those raised by East Moline, which we join in full. Nonetheless, in our case, the plaintiff not only had to allege physical impact or physical injury, but in order to even be able to establish the essential element of duty, they also had to show that there was either a special relationship or a voluntary undertaking, and they failed to meet that obligation to establish either element of a duty. In fact, they admit the only relevant special relationship here is that of business invitor and invitee, a possessor of land, in other words, who invites somebody onto their land and is responsible for a condition on that land, their camera in this case. It's questionable whether that's even a condition of the land, but let's leave that aside for the moment. We didn't own that property. We didn't possess it. We didn't control it. We're in New Hampshire. That's Moline. We have no special relationship of business invite to our invitee with the plaintiff, so there's no special relationship to establish a duty here. It may or may not apply to the franchisee, but it definitely does not apply to the franchisor, so that leaves the plaintiff with trying to establish a voluntary undertaking here, and the problem is that the plaintiff didn't allege sufficient facts. In fact, they allege facts admitting that we didn't voluntarily undertake to protect them, so they've pled themselves out of court in this case. This is just like, well, let me back up a second, even for voluntary undertaking. Now, this is different than the rule that for negligent infliction, you have to establish physical impact or physical harm. The case law in Illinois is uniform that the voluntary undertaking rule applies only when the plaintiff incurs physical harm. That's the only time that that doctrine applies. There's no exceptions to that. Clark, all the other cases in discussing negligent infliction of emotional distress, do not apply to the doctrine of voluntary undertaking. The consensus is for that, you need physical harm. There is none. They admit there is none, so this doctrine doesn't apply at all either. Nevertheless, even if you look at the doctrine, the Lewis v. Hartland case that we cite in our brief is right on point. In that case, the plaintiff was in a McDonald's. He sued them because somebody stole his iPhone. When he was in the McDonald's, he alleged that they failed to provide man security. And his theory, nonetheless, was that there was a voluntary undertaking, and the court said, you just alleged in your complaint that they didn't undertake to provide man security. We're going to take you at your word. There is no voluntary undertaking. That's the same thing in this case. Their complaint alleges that the defendants in this case did not create, implement, or enforce policies or procedures intended to protect them in the tanning rooms from invasion of privacy. In other words, we did not create policies. We did not implement them. We did not enforce them, meaning we never undertook to do so.  as to how to search and inspect, meaning we didn't undertake, we did not voluntarily undertake to provide such training. There are no allegations in there in the second amendment complaint affirmatively saying that we undertook to do anything to protect anybody in those tanning rooms. That's true, and it's certainly true of us because we're in New Hampshire. We don't have the ability to do that. So they pleaded themselves out of court under a voluntary undertaking theory. Moreover, there are general allegations that we provided as part of our franchise agreement. We provided an operator's manual, certain unidentified and unclear specifications and standards and guidelines and so on. Even assuming that's true and even acknowledging that they failed to attach those guidelines to the complaint even though they had the opportunity to get them, the case law says that though providing those kind of standards, specifications does not constitute a voluntary undertaking to make sure that those guidelines are implemented or to control the actual physical location where those guidelines are supposed to be implemented. So the mere fact that we would have issued whatever guidelines they are, they're totally unidentified. Even if we did issue them, that did not constitute a voluntary undertaking to make sure that they were physically implemented in the tanning rooms in East Moline. One minute, please, counsel. Thank you. So we had no control over the day-to-day operations. There's no voluntary undertaking consequently. There's no dewey. Now, one way plaintiff tries to get around that is to allege an agency. The only facts in support of that are that we share the trademark and that we issued these guidelines. All of the case law consistently and uniformly, unanimously says that is not an agency. That does not create an agency. It's not sufficient to show control over the details, the operative details of the day-to-day operations of the franchisee, so there is no such agency. And unless there are any questions, that's all I have. Thank you. Mr. Warner, any rebuttal? We take issue with counsel's characterization that because they are within the defined state of New Hampshire, that they are unable to protect the customers at one of their franchisees. Well, first of all, legally the issue isn't whether they were able to do it. It's whether they had a duty to do it. Yes. In that context, we have alleged sufficient allegations of fact that show that they did have that duty. They did, including the fact that they called themselves a franchise. That franchise is the name of that corporation. So this isn't a motion for summary judgment. It's not a trial on merits. We have alleged sufficient facts, we suggest, to support the claim against the franchisor in New Hampshire or wherever the corporation may be. The counsel also didn't cite to the justices the Burger King case. In the Burger King case, they did impose liability on the franchisor under similar allegations of facts required. Wasn't there an impact on that? Yes, but that's a different issue. This was, you're asking me, did they have a duty? Did the franchisor have a duty? Yes, they did have a duty in tort, general negligence, to assure that the customers were adequately treated while they were in the franchise restaurant. We pled at least two separate causes of action. First, the business in vitor liability for the intentional, yes, intentional acts of third parties that result in emotional distress when the emotional distress is inherent in the cause of action for intrusion into seclusion as it would be within any other personal tort. Counsel says we, that was an example. Judge Garman brought it home. And let me read to you that case, the Shiles case, refers to Clark. Clark says, in such cases where the claim of emotional distress is freestanding and not anchored to any other tort, courts have applied special restrictions like the zone of danger rule. It is anchored to that tort. Well, let me ask you. Okay, so some kid's driving his car down the street at 100 mile an hour and he hits somebody and barely misses his brother or somebody, so the brother's got a claim for intentional inflection of emotional distress. Or even negligent inflection of emotional distress. It is on the danger, there's an impact. Now, take the same case, kid's driving a car down the street, kid and his brother stand there and he just misses both of them and still scares the Jesus out of them. And so they go in there and they say, neither one of them was hit, but that driving scared me so I'm going to sue this guy for negligent inflection of emotional distress. Yes or no? No. Because there's no impact. No. That would be an example of a freestanding court of cause of action for NIED. That's what they're talking about. This is different. This is not a freestanding tort for NIED. Well, no, the tort would be a damage. If you're negligent driving, you cause somebody injury. And you cause somebody injury and so as a result, at least the victim A, who was injured, has a personal injury claim. Injured, killed, whatever. The other guy has a freestanding claim of that. But if the car misses the guy and there's no impact, even though he's still scared because he came within that close to him and he has nightmares for a year because he came that close to him, getting killed because of this guy's negligence. Don't cause negligence. Because even though driving a hundred mile an hour down that street, most of you, that's tortious conduct, but it's got to result in cognitive damages. You don't get them without the impact. That's right. I agree with him. That's not what we're saying. We're saying that within the tort, any personal tort, well, most of them, appropriation of the name, that thing might be different, but that is an element of the cause of action. You can't have intrusion and exclusion unless you have emotional distress. There would be no damages. None. One minute. Clark has the analysis, almost verbatim, just as Garman has. He's trying to emphasize that in the Clark case. Two causes of action. One, the negligence of the franchisor and the franchisee in failing to take reasonable care of its customers, which led to an intentional criminal act by a third person, resulting in a personal tort, an element of which is emotional distress. Secondly, I pled this because I pled a premises liability cause of action. I think the facts would support that. In this case, what we're saying is that the franchisee and franchisor allowed a dangerous condition to exist on the premises, which even though they had notice of that dangerous condition, they did not do anything to protect the customers, which led to this tort of intrusion into seclusion. Now, I've got 30 seconds. The courts are saying that the premises liability is just negligence. Well, it is and it isn't. The courts have said that, but I think it's really in a premises liability case, the focus is on the land or the structure. That's the focus. In a traditional negligence case, the focus is on the person, the tort user. So I do think that there's a dispute. Thank you very much. We thank both of you, all three of you, for your arguments this afternoon. We'll take the matter under advisement  The court will now stand and re-process for a quorum.